UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cr-00486-SRC |
| | ) | |
| RANDALL PALLARITO, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum and Order**

Randall Pallarito claims that he is entitled to home confinement due to his rehabilitation and his health. *See* doc. 65 at 1–2 (The Court cites to page numbers as assigned by CM/ECF.). Having reviewed the record, the Court finds that Pallarito fails to establish any extraordinary and compelling reason warranting home confinement and that the factors set forth in 18 U.S.C. § 3553(a) weigh against his early release.

## I. Background

### A. Offense background

The Guilty-Plea Agreement sets forth the following facts:

> 1. On October 14, 2021, St. Louis County Police Department Special Investigations Unit identified a computer by IP address that possessed and distributed child pornography on a peer-to-peer file sharing network.
>
> 2. Law enforcement made a direct connection with the computer and downloaded the following images of child pornography:
>
> a. "Pthc- Mom Licks & Plays With Little Boys Dicks-New!!- Pedo, Incest, Share More Moms and Kids (abt 5yo.jpg" – a graphic image file that is comprised of 4 images of the genitals of a nude prepubescent minor male with a female touching the minor's penis with her hand and tongue.

b. “qqaazz pthc pedo cute 3yo girl shows her jewels.jpg” – a graphic image file that depicts a toddler minor female wearing a blue dress and multi-colored underwear that are pulled down to her ankles, lying on her back with her feet above her head in a lewd and lascivious display of her genitals.

3. Law enforcement identified that IP address as being assigned to [Pallarito’s] residence in Fenton, Missouri.

4. Law enforcement applied for and received a valid Jefferson County search warrant of [Pallarito’s] residence on January 18, 2022, and executed the warrant the following day.

5. [Pallarito] lives at his residence alone. He was home when the search warrant was executed.

6. [Pallarito] was interviewed in the front passenger seat of a law enforcement vehicle. He was read his Miranda rights and [Pallarito] stated that he understood them. [Pallarito] told detectives where his electronic devices were located in his home but refused to provide passwords for them. [Pallarito] stated that he previously used peer-to-peer file sharing software on his desktop computer in his bedroom.

7. During a search of the residence, law enforcement seized a Lexar 64GB thumb drive and a Sandisk cruzer 16GB thumb drive that were both plugged into a Compaq computer tower located in the master bedroom. While on scene, law enforcement previewed these two thumb drives and discovered images of child pornography. Law enforcement also seized the Compaq computer tower, a Dell computer, 7 cell phones, an RCA Insignia tablet and 18 VHS tapes.

8. Law enforcement forensically examined the Lexar 64Gb thumb drive and determined that it was produced outside the State of Missouri. The examination also revealed numerous images of child pornography, including the following:

a. “mo802.mp4” – a graphic video file that depicts, in part, a male performing anal sex on a minor male who is wearing a blue shirt with cartoon characters on it and the title “Kids Club” appears at the top right comer of the video;

b. “ss850134.jpg” - a graphic image file that depicts an image of a nude minor male in a lewd and lascivious display of his genitals and the image has been cut and pasted on top of an image of a field; and

c. "047.jpg" - a graphic image file that depicts a nude minor male holding a gun in a lewd and lascivious display of his genitals.

9. Law enforcement forensically examined the SanDisk cruzer 16GB thumb drive and determined that it was produced outside the State of Missouri. The examination also revealed numerous images of child pornography, including the following:

a. "st12 (1583).jpg" – a graphic image file that depicts nude minor male wearing a collar around his neck and holding his penis while another camera is pointed at his genitals;

b. "st12 (1848).jpg" - a graphic image file that depicts a nude minor male laying on his back with his legs bound and a gag in his mouth in a lewd and lascivious display of his genitals; and

c. "000-068.jpg" - a graphic image file that depicts a nude minor male sitting on a chair covering in netting material in a lewd and lascivious display of his genitals.

10. In total, there were more than 15,000 images of child pornography discovered on the Lexar 64GB thumb drive and a Sandisk cruzer16GB thumb drive.

11. In summary, [Pallarito] admits that, between October 2021 and February 2022, he knowingly possessed more than 600 images of child pornography that was produced using materials that traveled in interstate and foreign commerce, to wit, the Lexar 64GB thumb drive and a Sandisk cruzer 16GB thumb drive, said devices having been produced outside Missouri. [Pallarito] admits that the child pornography included infants and toddlers and involved materials that portray sadistic or masochistic conduct or other depictions of violence.

Doc. 25 § 4.

### B. Procedural background

In August 2022, a federal grand jury indicted Pallarito on two counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Doc. 2 at 1–4. In April 2023, Pallarito voluntarily pleaded guilty to both counts. Doc. 24; doc. 25 § 2; *see also* doc. 2 at 1–4. In exchange, the United States agreed to bring no further federal prosecution in this district concerning Pallarito's possession of child pornography between October 2021 and January 2022

of which the United States was aware at the time of Pallarito's guilty plea. Doc. 25 § 2. In September 2023, the Court sentenced Pallarito to an aggregate sentence of 54 months' imprisonment and a life term of supervised release. Doc. 38 at 2–3. Pallarito did not appeal his conviction or his sentence.

In November 2024, Pallarito filed his first compassionate-release motion. Doc. 41. Pallarito later withdrew the motion after he was transferred to Federal Medical Center Lexington. *See* doc. 63. In June 2026, Pallarito filed his second compassionate-release motion, doc. 65, which the Federal Public Defender declined to supplement, doc. 66. Because the Court didn't order the United States to respond, Pallarito's motion is now ripe for the Court's consideration.

## II. Standard

The compassionate-release statute provides:

> (c) MODIFICATION OF AN IMPOSED TERM OF IMPRISONMENT.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . . .

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). After sentencing, district courts have very limited authority to modify the sentence. *See* 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except [under certain listed exceptions]."); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. § 3582(b))); Fed. R. Crim. P. 35(a) ("Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.").

The Court may grant compassionate release if the court finds, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

## III. Discussion

### A. Exhausting administrative remedies

"According to the plain terms of § 3582(c)(1)(A), prisoners can bring compassionate-release motions on their own once they have exhausted their administrative remedies." *United States v. Houck*, 2 F.4th 1082, 1083 (8th Cir. 2021) (citation omitted). "Exhaustion occurs at the earlier of either (1) when the prisoner has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner's] facility.'" *Id.* at 1083–84

(alteration in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). "This requirement is a mandatory claim-processing rule." *Id.* at 1084 (citation omitted). But "[u]nlike jurisdictional rules, mandatory claim-processing rules may be forfeited 'if the party asserting the rule waits too long to raise the point.'" *Manrique v. United States*, 581 U.S. 116, 121 (2017) (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005) (per curiam)). As such, courts enforce the rule when the opposing party properly raises failure to exhaust as a defense. *Houck*, 2 F.4th at 1084; *Manrique*, 581 U.S. at 121. The United States has not raised the issue of failure to exhaust here. Therefore, the Court will proceed to the merits.

**B. Extraordinary and compelling reasons**

The Court considers not only the text of the statute but also the applicable policy statements in the advisory guidelines. Recognizing that the Supreme Court currently is considering how much deference if any courts should give to the policy statements, *see Beaird v. United States*, 146 S. Ct. 2553 (2026) (cert. granted), the Court considers the policy statements only to the extent that it finds them to be correct statements of the law and persuasive guidance.

**1. Rehabilitation**

First, Pallarito argues that his rehabilitation supports his request for home confinement. Doc. 65 at 1. The applicable policy statement issued by the Sentencing Commission provides:

> Pursuant to 28 U.S.C. [§] 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S. Sent'g Guidelines Manual § 1B1.13(d) (U.S. Sent'g Comm'n 2026). Pursuant to the policy statement, rehabilitation alone is not a basis for a reduction in Pallarito's term of imprisonment and does not constitute an "extraordinary and compelling reason" that warrants a

reduction. *Id.* Even so, Pallarito offers no evidence to support his supposed rehabilitation. Doc. 65 at 1. Even if the Court could consider rehabilitation alone, Pallarito fails to establish rehabilitation.

**2. Health**

Second, Pallarito argues that his health supports his request for home confinement. Doc. 65 at 1. Specifically, Pallarito claims:

> I AM 78 YRS. [sic] OLD WITH FAILING HEALTH. ALTHOUGH FMC LEXINGTON IS ADDRESSING MY HEALTH CONCERNS, I CAN ACHIEVE THE SAME OR BETTER CARE THRU [sic] THE V.A. AND MEDICARE. I AM A 4YR [sic] VIETNAM VETERAN.

*Id.* The policy statement explains that medical circumstances may warrant a sentence reduction when the defendant suffers from a terminal illness, exhibits a substantially diminished ability to take care of himself, requires long-term or specialized care that he is not receiving in custody, or is at risk of an ongoing infectious-disease outbreak or public-health emergency. *See* U.S. Sent'g Guidelines Manual § 1B1.13(b)(1) (U.S. Sent'g Comm'n 2026). Specifically, the applicable policy statement provides:

> (b) Extraordinary and Compelling Reasons.--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> (1) Medical Circumstances of the Defendant.--
>
> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is--
>
> (i) suffering from a serious physical or medical condition,

> > (ii) suffering from a serious functional or cognitive impairment, or
> >
> > (iii) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances--
>
> > (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> >
> > (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> >
> > (iii) such risk cannot be adequately mitigated in a timely manner.

*Id.* Applying the plain meaning of the applicable policy statement, Pallarito fails to set forth an "extraordinary and compelling reason" that warrants a reduction. *See* doc. 65. The evidence does not reflect that Pallarito is currently experiencing a deteriorating physical or mental condition that would diminish his ability to function in a correctional facility, and his medical conditions, whatever they may be, are not terminal. *See id.* Additionally, Pallarito admitted

that FMC Lexington had addressed his health concerns. *Id.* at 1. Again, Pallarito fails to establish entitlement to a sentence reduction or home confinement.

**C. Section 3553(a) factors**

Even if extraordinary and compelling reasons supported Pallarito's request for a sentence reduction—which they do not—the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Among others, these factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed, *inter alia,* "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1)–(2). The Court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Eighth Circuit affords district courts "broad discretion" in weighing the section 3553(a) factors. *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021) (citation omitted). District courts need not "mechanically recite the sentencing factors listed in 18 U.S.C. § 3553(a)." *United States v. Rodd*, 966 F.3d 740, 748 (8th Cir. 2020) (citation omitted). "When considering the § 3553(a) factors, '[a] district court is not required to make specific findings; all that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors.'" *United States v. Castillo*, 713 F.3d 407, 412 (8th Cir. 2013) (alteration in original) (quoting *United States v. Perkins*, 526 F.3d 1107, 1110 (8th Cir. 2008)).

After reviewing the section 3553(a) factors, the Court finds that Pallarito has failed to carry his burden for release. When reviewing the nature and circumstances of the offense and

the history and characteristics of Pallarito, the Court finds that these factors weigh heavily against release.

In this case, Pallarito knowingly possessed child pornography. Doc. 31 ¶ 17. Pallarito "used the internet and multiple computer or electronic devices to possess . . . over 26,400 images" of child pornography. *Id.* "[T]he victims of the instant offense are the children who were utilized to make the graphic images for the pornography." *Id.* ¶ 20. Additionally, Pallarito received a below-the-guidelines-range sentence. *See id.* ¶ 75 (showing a guidelines range of 78–97 months' imprisonment); doc. 38 at 2 (showing Pallarito's received a sentence of 54 months' imprisonment). Prior to this case, Pallarito received a misdemeanor conviction for operating a vehicle while intoxicated. Doc. 31 ¶ 42.

Pallarito fails to come forward with anything that would change the Court's original analysis at sentencing. Releasing Pallarito early would neither reflect the seriousness of his offense nor provide just punishment for his offense. And it would give rise to unwarranted sentence disparities among similarly situated defendants. For these reasons, the Court finds that the section 3553(a) factors weigh against Pallarito's release. Having thoroughly considered the record and all relevant matters, the Court finds no basis to reduce Pallarito's term of imprisonment.

## IV. Conclusion

Accordingly, the Court denies Pallarito's [65] First Step Act Motion.

So ordered this 5th day of November 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE